IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

**BRENDA FELTON**

       **Plaintiff**

   v.

                                  **Civil No. 2:12-CV-558**

**CAROLYN W. COLVIN,**

       **Acting Commissioner,**
       **Social Security**
       **Administration,**
       **Defendant.**

## ORDER

This matter comes before the Court on Brenda Felton's ("Plaintiff") Objections to Magistrate Judge Tommy E. Miller's Report and Recommendation ("R&R"). For the reasons herein, the Court: (1) **ACCEPTS** the R&R, ECF No. 17; (2) **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("Defendant"); (3) **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 12; and (4) **GRANTS** Defendant's Motion for Summary Judgment. ECF No. 14.

## Contents

I.      PROCEDURAL BACKGROUND ........................................................................... 2

II.     FACTUAL BACKGROUND ................................................................................. 3

    A.    PLAINTIFF'S BACKGROUND ................................................................. 3

    B.    MEDICAL HISTORY ............................................................................. 4

    C.    ALJ HEARING - OCTOBER 28, 2010 ................................................. 11

III.    STANDARD OF REVIEW ................................................................................. 13

IV.    ANALYSIS ....................................................................................................... 15

    A.    OBJECTION ONE: THE ALJ FAILED TO WEIGH HIGHLY PROBATIVE MEDICAL EVIDENCE IN HIS DECISION, AND THE MAGISTRATE JUDGE SUBSTITUTED HIS JUDGMENT FOR THAT OF THE ALJ ......................................... 16

**B.**    **OBJECTION TWO: THE R&R ERRS IN NOT REQUIRING THE ALJ TO HAVE A PSYCHOLOGIST OR PSYCHIATRIST COMPLETE A PSYCHIATRIC REVIEW** .......................................................................................................... 17

**C.**    **OBJECTION THREE: THE R&R ERRS IN FINDING THAT THE ALJ ADEQUATELY CONSIDERED MS. FELTON'S SUBJECTIVE COMPLAINTS** ............. 18

**D.**    **OBJECTION FOUR: IT IS IMPROPER TO HAVE FOUND MS. FELTON'S DIABETIC RETINOPATHY TO BE A NON-SEVERE MEDICAL IMPAIRMENT** .......... 19

**E.**    **OBJECTION FIVE: THE R&R ERRS IN CONCLUDING THE ALJ CONSIDERED MS. FELTON'S SEVERE OBESITY** .................................................. 20

**V.**     **CONCLUSION** ............................................................................................... 20

## I.    PROCEDURAL BACKGROUND

Plaintiff protectively applied for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") on February 17, 2009,[1] alleging a disability as of January 14, 2009, caused by diabetes, tendonitis and bursitis in her shoulder, neuropathy, asthma, bronchitis, and arthritis in both hands. R.2 144-56, 253. The Commissioner denied Plaintiff's application at the initial level, and at the reconsideration level of administrative review. R. 70-107, 118-29. The Plaintiff then requested a hearing by an Administrative Law Judge (ALJ). R. 130-34. On October 28, 2010, Plaintiff, who appeared with counsel, and a vocational expert testified before the ALJ. R. 35-48.

On November 15, 2010, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. R. 23-34. The Appeals Council denied Plaintiff's request for administrative review of the ALJ's decision. R. 1-6. Therefore, the ALJ's decision stands as the final decision of the Commissioner for purposes of judicial review. See 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481 (2012).

---

[1] Plaintiff filed a previous DIB application, which was denied at the initial level of consideration on May 18, 2007. R. 249. Plaintiff did not pursue the case further.

[2] Page citations are to the Administrative Record.

Pursuant to 42 U.S.C. § 405(g), Plaintiff timely filed the instant action for judicial review of Defendant's final decision. Plaintiff filed her Motion for Summary Judgment on January 25, 2013. ECF No. 12. Defendant filed her Motion for Summary Judgment February 27, 2013. ECF No. 14. The matter was then referred to a United States Magistrate Judge Tommy E. Miller pursuant to: (1) 28 U.S.C. § 636(b)(1)(B) and (C); (2) Rule 72(b) of the Federal Rules of Civil Procedure; (3) Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. Judge Miller issued his R&R with respect to the parties' opposing motions October 3, 2013. ECF No. 17. The R&R recommends that this Court DENY Plaintiff's Motion for Summary Judgment, AFFIRM the final decision of Carolyn Colvin, the Acting Commissioner of the Social Security Administration, and GRANT Defendant's Motion for Summary Judgment. Plaintiff filed her objections to the R&R October 3, 2013. ECF No. 18. Defendant responded October 25, 2013. ECF No. 19.

## II.   FACTUAL BACKGROUND

### A. Plaintiff's Background

Plaintiff was born in 1955 and was 53 years old on her alleged disability onset date. R. 38. She graduated from high school, and completed some nurse training. R. 38, 167, 246, 257, 267. She has past relevant work experience as a nursing assistant, a bread slicer, a telemarketer, a caterer, and a telephone operator. R. 39-40, 45, 200, 201, 223, 242, 246, 254, 261, 297-310. She last worked as a telemarketer and stopped working on January 13, 2009, when she was laid off. R. 39, 200, 261-62.

In a Function Report completed in conjunction with her disability applications, Plaintiff reported that she lived alone in an apartment. R. 232. She reported that she could tend to most of her personal care needs independently and did not need reminders to take care of her grooming,

to take medicine, or to go places. R. 233, 236. Her daughter helped with Plaintiff's hair and with her insulin, because Plaintiff's hands were sore and would swell. R. 233. She prepared her own meals, dusted, folded laundry, made her bed daily, went outside daily, used public transportation, shopped in stores, and spent time with others daily. R. 234-36. Her daughter did her laundry. R. 234. Plaintiff paid bills, counted change, handled a savings account, and used a checkbook/money orders. R. 235. Plaintiff listed her interests and social activities as: reading, doing puzzles, watching television and movies, reading the Bible, listening to music, and attending church activities. R. 236. She reported that she went to church every Sunday and sometimes on Wednesday nights. R. 236. Plaintiff denied having problems getting along with family, friends, neighbors, or others; paying attention; or reading and understanding written and spoken instructions. R. 237. She stated that she got along "very well" with authority figures, and had never been fired or laid off from a job because of problems getting along with other people. R. 238. She stated her vision was dim, her hands were stiff with arthritis, and she hurt all of the time. R. 237. She also indicated she took prescribed medication for stress, and that stress affected her blood pressure and blood sugar. R. 238.

### B. Medical History[3]

Plaintiff suffers from diabetes and high blood pressure, and has had asthma since birth. R. 346, 601. In January 2002, seven years prior to her alleged disability onset date, Plaintiff injured her right shoulder in a motor vehicle accident. R. 325-28. Plaintiff is five feet and one inch tall, and weighed 222 pounds on August 15, 2010, one month prior to her ALJ hearing. R. 240, 252, 546, 588, 779.

---

[3] Defendant does not dispute Plaintiff's recitation of the medical evidence. Def.'s Mem. in Supp. of Mot. for Summ. J. 13, ECF No. 15. In Plaintiff's Reply, Plaintiff offered minor corrections and additions to Defendant's recitation of medical evidence. Pl.'s Reply 2-6. Consequently, the factual background herein is largely taken from the recitations made in the three briefs filed by the parties.

On April 12, 2009, Plaintiff sought emergency room care for an asthma exacerbation. R. 469, 601. She was treated with Prednisone, which led to vomiting and upper gastrointestinal bleeding due to gastritis requiring an endoscopy procedure and a nine-day hospital stay. R. 466-583, 601. During her hospitalization from April 12 through April 20, 2009, Plaintiff was treated for severe esophagitis, upper GI bleeding, severe reflux, dehydration, and high blood sugar levels. R. 468-583. Her blood sugar levels were above the normal range of 65-99 on over 30 readings taken during the hospital stay, reaching as high as 500 on one test. R. 467-565. See Pl's Mem. 4-5. With the exception of high blood sugar levels and epigastric abdominal pain, her attending providers reported essentially normal physical findings. R. 471, 488, 492-93, 519, 525. Examinations were negative for blurred vision, eye discharge or eye pain. R. 469, 487, 492. Her providers noted on two occasions that she was anxious (R. 480, 529), and on two occasions that she had a depressed mood (R. 505, 548). Other entries reflected that she was alert and oriented; her mood, memory, affect and judgment were normal; and, she was "negative for depression and hallucinations." R. 471, 488, 492, 493, 519, 529.

Plaintiff received general medical care from the Sentara Ambulatory Care Center (Sentara) following the April 2009 hospital stay until August 2010. R. 596-662, 669-778. She was seen by several providers, including Martha Scott, M.D., for various conditions, including diabetes and hypertension. Id. Of the eleven blood sugar tests conducted during this time, eight revealed blood sugar levels above the normal range of 65-99, with levels ranging from 125-199. R. 614, 642, 655, 659, 686, 700, 705, 716, 722, 739, 742, 746, 759, 769, 771, 776.

On May 12, 2009, Plaintiff received medication for constipation and gastroesphogeal reflux disease (GERD). R. 612. On examination, she was well developed, alert, and oriented "times three" (i.e. oriented to person, place and time). R. 613-14. She had normal heart sounds,

normal lungs, a normal abdomen, and normal skin. R. 613-14.

At the state agency's request, Plaintiff attended a consultative examination with Gustavo Vargas, M.D., on June 15, 2009. R. 587-95. Plaintiff reported that she was seeking disability based on type II diabetes, hypertension, and asthma. R. 588. She explained that her diabetic neuropathy was moderately controlled by medication, and she did not know whether she had diabetic retinopathy. R. 588. She stated that her hypertension was "fairly well controlled" with treatment, and denied damage to her vital systems. R. 588. Plaintiff further explained that she had asthma since infancy, and had been hospitalized at least twice a year due to attacks. R. 588. Plaintiff alleged limitations in walking, standing, lifting, and carrying, but reported that she could sit without limitation and had no difficulty getting along with others. R. 589. She reported that she lived alone and could perform light household chores such as vacuuming, dusting, washing dishes, and laundering clothes. R. 590. She had a history of GERD, which was controlled with medication. R. 591. She denied a history of severe anxiety and compulsive or antisocial traits, and Dr. Vargas detected no psychoses, bipolar disorder, or schizophrenia. R. 590.

On examination, Plaintiff had 20/40 uncorrected vision, normal hearing, normal speech, a normal chest, normal lungs, normal heart sounds, a normal abdomen, and normal range of motion in her neck, arms, legs, and trunk. R. 593, 595. Plaintiff performed straight leg raising testing to 90 degrees bilaterally. R. 593. Plaintiff had 2+ reflexes in her arms and legs, normal cranial nerves, and 5/5 hand and pinch strength. R. 593. Dr. Vargas diagnosed type II diabetes with evidence of diabetic retinopathy and neuropathy, hypertension, and asthma. R. 594.

With respect to work-related abilities, Dr. Vargas opined that Plaintiff could lift 40 pounds infrequently and lift and carry 15 to 25 pounds to about 300 feet on a repetitive basis with frequent breaks; she had no manipulative limitations; she had moderate limitations in

working in altitudes, using planks and scaffolds (especially in cold temperatures), working in warm and humid environments, and speaking for several hours; she could sit for longer than four hours and stand for 1 hour; and she had no mental limitations that would limit her ability to interact with her co-workers. R. 594.

On July 14, 2009, Plaintiff arrived at Sentara for a follow-up appointment for diabetes and hypertension, and to obtain a Commonwealth of Virginia medical disability form so she could obtain food stamps. R. 640. She reported high blood sugar and blood pressure readings, attributing the high blood pressure to stress. R. 643. On examination, she had a normal heart rate and rhythm, clear lungs, small bruises on her shins, bilateral decreased sensation in her toes, bilateral pedal edema, and a pitting edema in her left foot. R. 641. The attending nurse noted that Plaintiff's asthma was asymptomatic and her GERD was well-controlled on medication. R. 643-44. Plaintiff's blood sugar reading during the appointment was 164, but Plaintiff admitted that she had not been taking all of her diabetes medications. R. 643. Plaintiff was given medication for diabetes. R. 643.

Based on a review of the record, on July 20, 2009, state agency physician Robert Castle, M.D., opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for about six hours and sit for about six hours during an eight-hour day; perform unlimited pushing and/or pulling consistent with her lifting/carrying abilities; frequently climb ramps/stairs; never climb ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to fumes, odors, dust, and poorly ventilated areas. R. 73-75. Dr. Castle identified no manipulative, visual, or communicative restrictions. R. 74.

On September 22, 2009, Plaintiff complained to Dr. Scott of numbness in her feet and

high blood sugar readings, but denied eye problems. R. 653-54. She stated that she was not taking oral diabetes medications. R. 653. With the exception of wheezes in her lungs that cleared with coughing, Plaintiff's physical and mental status examination was normal. R. 655. Dr. Scott described Plaintiff's diabetes as poorly controlled, and her hypertension and GERD as well controlled; she adjusted Plaintiff's diabetes medication regimen. R. 657.

On November 17, 2009, Plaintiff complained of peripheral neuropathy in her feet and shortness of breath with weather changes. R. 713. The attending doctor at Sentara again noted unremarkable physical and mental status findings, including that Plaintiff appeared alert and oriented times three, her eye examination was normal, and she had normal range of motion. R. 715. No changes were made to her diabetes medication regimen. R. 717.

After conducting an independent record review, on December 18, 2009, state agency physician Michael Cole, D.O., agreed with Dr. Castle that Plaintiff could perform a range of medium work. R. 93-94. Dr. Cole's assessment was essentially identical to Dr. Castle's assessment, except that Dr. Cole opined that Plaintiff could occasionally climb ladders, ropes, and scaffolds. R. 93.

On January 19, 2010, Plaintiff arrived at Sentara complaining of chest pain and a headache. R. 698. She stated that she felt anxious about many things, including her son being in jail, but she denied suicidal or homicidal thoughts or taking psychotropic medication. R. 698. On examination, Plaintiff was in no acute distress and she had a normal neck, no edema in her arms or legs, weak pedal pulses bilaterally, and a full range of motion in her right shoulder. R. 700. The attending doctor prescribed medication, advised weight loss and exercise, and referred Plaintiff for further diabetes care and behavioral health services. R. 702.

On February 23, 2010, Plaintiff consulted with an unknown examiner at the Eastern

Virginia Medical School ("EVMS") Department of Psychiatry, stating she felt overwhelmed and depressed. R. 667- 68. Plaintiff denied a psychiatric history, lethal thoughts, or psychotic symptoms, and stated that she felt "ok, happy and good" about herself. R. 667. Plaintiff discussed sexual abuse she suffered as a child, but denied flashbacks, avoidance, numbing or physical symptoms resulting from the abuse. R. 667. She explained difficulties with her parents, and that her son had been incarcerated. R. 667-68. The examiner assessed mood disorder, NOS (not otherwise specified), sexual aversion disorder, polysubstance abuse in full sustained remission, depressive disorder, dysthymic disorder, and personality disorder, NOS. R. 668. The examiner assigned a Global Assessment of Functioning ("GAF") score of 50.[4] R. 668. Plaintiff was to return in one week for another session, and was to consider starting low dose psychiatric medication. R. 668.

One week later, at a routine follow-up appointment at Sentara on March 2, 2010, Plaintiff denied behavioral or psychological problems, and denied diabetic symptoms. R. 685. Examination of her eyes, head, ears, nose, throat, lungs, heart, and abdomen was normal. R. 685. Plaintiff also had a normal gait, normal affect, normal judgment, normal memory, normal mood, and she was awake, alert, and oriented times three. R. 685. Plaintiff weighed 212 pounds. R. 685. She reported high blood sugar readings, but the examiner noted that Plaintiff was not taking her blood sugar readings at the right times. R. 685. Plaintiff received medication for hypertension, diabetes, and asthma. R. 687.

On March 24, 2010, a diabetic foot examination at Sentara revealed palpable pedal pulses

---

[4] The Global Assessment of Functioning ("GAF") is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of individuals. *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)* 30-32 (4th ed., text rev., 2000). A GAF between 41 and 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) *or* any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work)." *Id.*

bilaterally, diminished protective sensation, bilateral dorsal bunion deformity, crepitus with range of motion, and no open lesions. R. 672. Plaintiff was assessed with diabetic neuropathy and hallux limitus. R. 672.

On May 18, 2010, Plaintiff returned to Sentara for medication refills. R. 769. She reported that the tingling and pain in her feet was relieved by Neurontin. R. 769. She reported feeling anxious about her upcoming disability hearing, but denied depression. R. 769. Dr. Scott noted that Plaintiff was not taking psychotropic medication. R. 769. Dr. Scott documented normal physical and mental status findings, including that Plaintiff was alert and oriented times three with a normal affect, normal judgment, normal memory, and a normal mood. R. 771-73. Dr. Scott adjusted Plaintiff's medication regimen, and referred Plaintiff to a dietician. R. 771-73. In June 2010, Plaintiff was advised to eat properly and exercise to control her diabetes and obesity. R. 759-60.

On June 23, 2010, a foot examination at Sentara revealed palpable pedal pulses bilaterally, mild non-pitting edema in both feet, dorsal bunions, and limited range of motion with crepitus in Plaintiff's right foot. R. 751. Plaintiff agreed to pursue conservative treatment options for her foot pain, and was given a steroid injection. R. 751. An x-ray of Plaintiff's right foot, taken the following day, revealed narrowing of the first metatarsophalangeal joint, subcondral cysts on both sides of the joint, and a mild hallux valgus deformity. R. 754.

On July 20, 2010, Plaintiff told Dr. Scott that she was taking her diabetes medication as directed, and her blood sugar readings were between 60 and 120. R. 736. Plaintiff reported her eye doctor told her that her eyes had improved as her sugars improved, and she did not need surgery for diabetic retinopathy. R. 736. Plaintiff denied mental health symptoms and vision changes, but complained of foot pain bilaterally. R. 736-37. On examination, Plaintiff was alert

and oriented times three with a normal affect, normal judgment, normal memory, and normal mood. R. 738. Dr. Scott noted unremarkable physical findings, including with respect to Plaintiff's eyes. R. 738. Dr. Scott noted that Plaintiff's diabetes was better controlled on insulin, and increased Plaintiff's dose of Neurontin in response to Plaintiff's foot pain. R. 740.

At a diabetic foot examination at Sentara on August 4, 2010, Plaintiff's examining podiatrist, Dr. James Underhill, noted that her diabetes was controlled. R. 726.   An x-ray revealed complete loss of the "first MPJ joint space" of her right great toe, dorsal spurring, and a subchondral cyst. R. 765. Plaintiff expressed interest in surgery for the hallux limitus of her right foot, but needed medical clearance from her primary care physician before the elective surgery could be scheduled. R. 726. Plaintiff decided to try conservative treatment, including stiff-soled shoes and Tylenol 500 mg for pain. R. 726.

On August 24, 2010, a polysomnogram (sleep study) at Sentara revealed constructive sleep apnea. R. 779-81. Robert D. Verona, M.D., recommended that Plaintiff begin a supervised weight loss program, control her upper airway congestion, use a CPAP machine while sleeping, and avoid driving while sleepy. R. 779-80.

Plaintiff received treatment at EVMS Ophthamology at the Lions Eye Center on seven occasions between March 5, 2010 and August 24, 2010. R. 782-90. According to these records, Plaintiff complained of blurred vision, burning, itchy and watery eyes, and floaters. R. 782-90. Plaintiff was diagnosed with severe non-proliferative diabetic retinopathy for which strict blood sugar control was recommended. R. 782-90.

### C. ALJ Hearing - October 28, 2010

At the ALJ hearing, Plaintiff testified that her main problems were diabetes and the complications arising from her diabetes, such as neuropathy. R. 40. She testified the neuropathy caused sharp pain that could be burning, hot, and quick. R. 40. Her feet would swell,

11

her legs go numb, and one of her toes did not bend. R. 40-41. Sometimes, she had to pull a chair in front of the sink to do dishes, because she could not stand for too long. R. 41. She had problems with her eyes, especially her right eye. R. 40. At the time of her hearing, she was taking three medications for her diabetes. R. 40.

Plaintiff also testified that she suffered from high cholesterol and asthma, and she took two medications for asthma. R. 40-41. In addition, she had shoulder pain due to an accident in 1992. R. 41.

Plaintiff testified that she lived in an upstairs apartment, and only went out when she really had to, because it was difficult for her to walk up and down the steps. R. 42. She used public transportation, but would try driving if she had a car. R. 41-42. A van picked her up to take her to church, and her daughter took her to the grocery store. R. 42.

Vocational expert, Edith Edwards, testified at the ALJ hearing. R. 44-47. She characterized Plaintiff's past relevant work as a bread slicer as light and unskilled, her work as a telemarketer as sedentary and semi-skilled, her work as a caterer as light and skilled, and her work as a telephone operator as sedentary and semi-skilled. R. 39, 45, 297-310.

The ALJ asked Ms. Edwards whether a hypothetical individual of Plaintiff's age, education, and work experience, who could lift up to 20 pounds occasionally and 10 pounds frequently, who could not perform reaching overhead with her right dominant hand or arm, and who could not tolerate exposure to more than a minimal amount of dust, fumes, noxious odors, chemicals, respiratory irritants or extremes of heat or cold, high humidity, or wetness, could perform any of Plaintiff's past relevant work. R. 45. The VE testified that a person with those limitations could perform Plaintiff's past relevant jobs of telemarketer, telephone operator, and caterer. R. 46.

12

The VE further testified that a person with those limitations could perform light unskilled jobs existing in significant numbers in the national economy, including occupations of office helper (137,500 national positions) and information clerk (236,000 national positions). R. 46. The VE explained that the identified jobs could be also performed if the person could stand for up to one hour but would have to sit for up to three hours before having to stand again, but the available numbers would be reduced by half. R. 46.

The VE testified there would not be any jobs for a person who needed to take unscheduled work breaks due to pain and discomfort to the extent that the person would be off task about 15% of the time. R. 46. Similarly, the VE testified there would be no jobs for a person limited to the work specified in the above hypothetical who was limited to unskilled, low stress work. R. 47. Lastly, the VE testified that her testimony was consistent with the information contained in the Dictionary of Occupational Titles. R. 47.

## III.   STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the Court reviews *de novo* any part of a Magistrate Judge's recommendation to which a party has properly objected. Fed. R. Civ. P. 72(b)(3). The Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* The Court may reject perfunctory or rehashed objections to R&R's that amount to "a second opportunity to present the arguments already considered by the Magistrate-Judge." *Gonzalez-Ramos v. Empresas Berrios, Inc.*, 360 F. Supp. 2d 373, 376 (D. Puerto Rico 2005); *see Riddick v. Colvin*, 2013 WL 1192984 *1 n.1 (E.D. Va., Mar. 21, 2013).

"Determination of eligibility for social security benefits involves a five-step inquiry." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *see also Johnson v. Barnhart*, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam). "The claimant has the burden of production and proof

in Steps 1-4. At Step 5, however, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering h[er] age, education, and work experience." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam) (internal citation omitted) (internal quotation omitted). If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps. *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

First, the claimant must demonstrate that she is not engaged in substantial gainful activity at the time of application. 20 C.F.R. § 404.1520(b). Second, the claimant must prove that he has "a severe impairment . . . which significantly limits . . . [his] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Third, if the claimant's impairment matches or equals an impairment listed in appendix one of the Act, and the impairment lasts—or is expected to last—for at least twelve months, then the claimant is disabled. *Id.* § 404.1520(d); *see* 20 C.F.R. pt. 404 subpart P app. 1 (listing impairments). If, however, the impairment does not meet one of those listed, then the ALJ must determine the claimant's residual functional capacity ("RFC"). The RFC is determined based on all medical or other evidence in the record of the claimant's case. *Id.* § 404.1520(e). Fourth, the claimant's RFC is compared with the "physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If it is determined that the claimant cannot meet the demands of past relevant work then, fifth, the claimant's RFC and vocational factors are considered to determine if he can make an adjustment to other work. If the claimant cannot make such an adjustment, then he is disabled for purposes of the Act. Id. § 404.1520(g)(1).

The Court's review of this five-step inquiry is limited to determining whether: (1) the

decision was supported by substantial evidence on the record; and (2) the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Johnson*, 434 F.3d at 65. "If the Commissioner's decision is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the Court must reverse the decision." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In deciding whether to uphold the Commissioner's final decision, the Court considers the entire record, "including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.'" *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011) (quoting *Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson*, 434 F.3d at 650 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). In performing its review, the court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson*, 434 F.3d at 653). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (quoting *Johnson*, 434 F.3d at 653).

## IV.    ANALYSIS

Plaintiff contends the Magistrate Judge made five errors. One, the R&R permits the ALJ to fail to weigh, or even mention the existence of, highly probative medical evidence in his decision, contrary to *Chenery*. *S.E.C. v. Chenery Corp.*, 318 U.S. 80 (1943). Two, the R&R erred in not requiring the ALJ to have a psychologist or psychiatrist complete a Psychiatric Review

15

Technique. Three, the R&R erred in finding that the ALJ adequately considered Ms. Felton's subjective complaints. Four, The R&R improperly found Ms. Felton's diabetic retinopathy to be a non-severe medical impairment. Five, the R&R erred in concluding that the ALJ considered Ms. Felton's severe obesity.

### A.   OBJECTION ONE: THE ALJ FAILED TO WEIGH HIGHLY PROBATIVE MEDICAL EVIDENCE IN HIS DECISION, AND THE MAGISTRATE JUDGE SUBSTITUTED HIS JUDGMENT FOR THAT OF THE ALJ

Plaintiff's assignment of error to the R&R on her first contention is comprised of a number of pieces. Although convoluted, at bottom, Plaintiff alleges that the Magistrate Judge substituted his judgment and upheld the ALJ's action upon a different ground than that relied upon by the ALJ, in violation of *Chenery. Id.*; *Cunningham v. Harris*, 658 F.2d 239, 244 n.3 (4th Cir. 1981). Specifically, Plaintiff assigns six sub-errors.

First, Plaintiff contends that the ALJ failed to weigh, or even mention the existence of, the February 23, 2010 mental evaluation by the EVMS Department of Psychiatry, and Judge Miller impermissibly substituted his judgment to cure the potential reversible error. Second, when the R&R used Ms. Felton's initial application for benefits – where she did not allege severe mental health problems – to determine that Ms. Felton does not have severe mental health problems, it erred because those problems developed later. Third, the R&R erred in not mentioning both Plaintiff's prescriptions for stress and the affect her stress has on her blood pressure and sugar levels. Fourth, the R&R failed to consider that Ms. Felton set forth that she had a severe mood and personality disorder preventing her from working on a full-time basis. Fifth, that the R&R and ALJ failed to consider that Ms. Felton could not afford more aggressive treatment for her mental problems as she was living on just $367 a month, a section 8 utility allowance of $167 a month, and $200 a month in Food Stamps, and did not have health insurance. Sixth, the R&R erroneously found that Ms. Felton's claim of mental health problems

is based solely upon the EVMS psychiatric report, when Ms. Felton was also found to be depressive in April 2007, May 2007, and April 2009 and diagnosed with mood disorder, personality disorder, and dysthymic disorder in February 2010. It is this sixth complaint, nestled within the averred first objection Plaintiff lodged against the R&R, that Plaintiff focuses her legal argument. She argues that the ALJ did not consider any of these mental diagnoses.

The R&R concludes that although the ALJ did not specifically state the GAF score that resulted form her 2010 evaluation, the ALJ did find Plaintiff had medically determinable mental impairments of mood disorder, depressive disorder, dysthymic disorder, and personality disorder. R&R at 18-19. The R&R found that the only evidence in the record before the ALJ concerning these diagnoses and the related GAF score was in the February 2010 evaluation. Therefore, the R&R reasoned, the ALJ must have reviewed this information. The R&R also discusses Plaintiff's April 2009 hospitalization at some length. The medical reports from that stay indicated fluctuating mental states between depressed mood and negative for depression.

The ALJ's findings encompass these prior diagnoses and the evaluation. Thus the R&R is correct, and the ALJ necessarily considered these diagnoses and evaluations in scrutinizing Plaintiff's mental health. The medical record therefore supported the ALJ's decision, the ALJ reviewed the relevant medical history regarding Plaintiff's mental health, and the Magistrate Judge did not violate the *Chenery* rule in so concluding.

**B.    OBJECTION TWO: THE R&R ERRS IN NOT REQUIRING THE ALJ TO HAVE A PSYCHOLOGIST OR PSYCHIATRIST COMPLETE A PSYCHIATRIC REVIEW**

Plaintiff contends that Magistrate Judge Miller also erred in not requiring the ALJ to have a psychologist or psychiatrist complete a Psychiatric Review Technique. Per Plaintiff, the ALJ violated unambiguous SSA policy which requires him to have a qualified mental health professional evaluate the evidence of mental impairment, perform a PRT analysis, and offer an

17

opinion as to listings equivalency. *See* 42 U.S.C. § 421(h); 20 C.F.R. §§ 405.1503(e), 416.903(e). Plaintiff therefore contends that if the ALJ is going to give little or no weight to the February 23, 2010 psychiatric evaluation, he should have referred the case for a mental health consultative review.

Plaintiff presented this argument before Magistrate Judge Miller in Plaintiff's Motion for Summary Judgment. Indeed, the language is almost identical in the original Summary Judgment Motion and the filed Objections. The Magistrate Judge reviewed this contention and rejected it. Plaintiff now seeks to rehash her R&R arguments through perfunctory objections. The Court may reject such rehashed arguments. *Gonzalez-Ramos v. Empresas Berrios, Inc.*, 360 F. Supp. 2d 373, 376 (D. Puerto Rico 2005); *see Riddick v. Colvin*, 2013 WL 1192984 *1 n.1 (E.D. Va., Mar. 21, 2013). Nevertheless, the Court reviewed this objection *de novo* and adopts and approves the Magistrate Judge's findings and recommendation.

### C.    OBJECTION THREE: THE R&R ERRS IN FINDING THAT THE ALJ ADEQUATELY CONSIDERED MS. FELTON'S SUBJECTIVE COMPLAINTS

Third, Plaintiff contends that the R&R erred by deferring too much to the ALJ's credibility determinations of Plaintiff's complaints regarding her alleged pain, vision problems, shortness of breath, fatigue, and emotional and psychological problems. Plaintiff explained at her hearing that her diabetes causes her pain, her feet swell, she is short of breath, often tired, cannot stand too long, has elevated blood sugar levels, chronic asthma, and sleep apnea. Plaintiff also contends that the R&R used evidence of Plaintiff's ability to do limited household chores as evidence of an ability to perform semiskilled work as a telephone operator, which was in error because the two are not equivalent. In addition, Plaintiff contends that the ALJ did not discuss the finding made based on Plaintiff's sleep study evaluation nor her high blood sugar tests. She also suggests error in the ALJ's failure to discuss a psychiatric report from February 2010.

Therefore, Plaintiff contends remand is necessary so that the ALJ can properly assess Plaintiff's subjective complaints after consideration and discussion of all the evidence of record, including her obesity, sleep apnea, and mental condition.

As with Plaintiff's second objection, this argument was presented before the Magistrate Judge in Plaintiff's Motion for Summary Judgment. Magistrate Judge Miller reviewed this contention and rejected it. Plaintiff now makes an objection in order to rehash her arguments. The Court may reject this rehashing. *Gonzalez-Ramos v. Empresas Berrios, Inc.*, 360 F. Supp. 2d 373, 376 (D. Puerto Rico 2005); *see Riddick v. Colvin*, 2013 WL 1192984 *1 n.1 (E.D. Va., Mar. 21, 2013). Despite this discretion, the Court reviewed this objection *de novo* and adopts and approves the Magistrate Judge's findings and recommendation.

### D.   OBJECTION FOUR: IT IS IMPROPER TO HAVE FOUND MS. FELTON'S DIABETIC RETINOPATHY TO BE A NON-SEVERE MEDICAL IMPAIRMENT

Plaintiff contends that the ALJ's finding regarding her lack of a severe vision problem was both factually and legally flawed and that the R&R failed to consider these errors. Plaintiff contends that her vision problem is not *de minimis*. She had been diagnosed with diabetic retinopathy in 2004 and saw doctors six times in 2010 because of her eye problems. The R&R and ALJ, according to Plaintiff, failed to acknowledge that medical records document 20/70 to 20/200 fluctuating vision in both eyes, with corrected fluctuating vision between 20/40 to 20/80, and that she experienced blurry vision, floaters, as well as itchy eyes and watery discharge at times. Furthermore, Plaintiff contends that both the Magistrate Judge's and the ALJ's belief that her diabetic retinopathy was not severe because she did not require surgical treatment for it, lacks any medical or scientific support.

Plaintiff is mistaken. The R&R documents Plaintiff's vision problems and specifically discusses her corrected and uncorrected vision. R&R at 19-20. For the reasons stated in the

R&R, the Court, after *de novo* review, concludes that substantial evidence supports the ALJ's finding that Plaintiff's diabetic retinopathy was not a severe impairment.

### E.   OBJECTION FIVE: THE R&R ERRS IN CONCLUDING THE ALJ CONSIDERED MS. FELTON'S SEVERE OBESITY

Plaintiff contends that the R&R erred in not remanding the case to the ALJ when the ALJ failed to discuss Plaintiff's obesity in his opinion. Instead, Plaintiff charges that the R&R uses post-hoc rationalization to determine that the ALJ's failure to consider Plaintiff's severe obesity was harmless error and that the ALJ sufficiently considered her weight by considering the opinions of Dr. Vargas and the state agency review physician who considered her weight. Plaintiff contends that this failure is critical and renders the ALJ's decision indefensible. *See* SSR 02-01p, 2000 WL 268049.

Having considered this objection *de novo*, the Court rejects it for the reasons stated in the R&R. Moreover, the Court finds Plaintiff's counsel's contention that "it is doubtful that any woman would testify that their obesity causes them specific problems" unpersuasive.

## V.   CONCLUSION

Having reviewed Plaintiff's objection *de novo*, the Court: (1) **ACCEPTS** the R&R, ECF No. 17; (2) **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("Defendant"); (3) **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 12; and (4) **GRANTS** Defendant's Motion for Summary Judgment. ECF No. 14.

The Clerk is **DIRECTED** to enter judgment in favor of defendant and to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

Robert G. Doumar
Senior United States District Judge

_____
UNITED STATES DISTRICT JUDGE

Norfolk, VA
January __, 2014